THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ATRON CASTLEBERRY and | : | Case No. 4:15-CV-00153 |
| JOHN BROWN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| STI GROUP and CHESAPEAKE | : | |
| ENERGY CORPORATION, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
November 4, 2015

Before the Court for disposition is Defendant Chesapeake Energy

Corporation's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to

FED.R.CIV.P. 12(b)(6). (ECF No. 16).  For the following reasons, Defendant's

Motion to Dismiss will be granted.  Plaintiffs are, however, given leave under

FED.R.CIV.P. 15 to amend the deficiencies of their Complaint.

I.    **BACKGROUND**[1]

On June 1, 2015, Plaintiffs Atron Castleberry and John Brown (hereinafter

"Plaintiffs") filed an Amended Complaint against Defendants STI Group and

---

[1] For purposes of this Motion to Dismiss, the allegations presented in Plaintiffs'
Amended Complaint will be taken as true, and all inferences will be construed in the light most
favorable to Plaintiffs.

Chesapeake Energy Corporation, alleging: (1) race-based harassment under 42

U.S.C. § 1981; (2) racial discrimination under 42 U.S.C. § 1981; and (3) retaliation

under 42 U.S.C. § 1981. (Plaintiffs' Amended Complaint, ECF No. 14, hereinafter

"Amended Compl.").

According to the facts as set forth within Plaintiffs' Amended Complaint,

Castleberry and Brown are African American males who were both hired by STI

Group in or around March 2010. *Id.* ¶¶ 14-16.  STI Group, a

subcontractor/placement staffing agency for Chesapeake Energy Corporation

(hereinafter "Chesapeake Defendant"), subsequently assigned them as general

laborers for Chesapeake Defendant. *Id.* ¶¶ 17-18.  Castleberry and Brown were

specifically assigned to a crew under the supervision of both STI Group Defendant

Superintendent Glenn Wyatt (hereinafter "Superintendent Wyatt") and STI Group

Defendant Project Manager Jim Bender (hereinafter "Project Manager Bender").

*Id.* ¶ 19.  At all relevant times throughout their employment, Castleberry and

Brown were assigned to the Towanda, Pennsylvania location under the additional

supervision of Chesapeake Defendant's Head of Safety, Tammy Bennett

(hereinafter "Head of Safety Bennett"), and Chesapeake Defendant's Director of

Safety, Shad MacNaughton (hereinafter "Director of Safety MacNaughton"). *Id.* ¶¶

19, 24, 27.  Castleberry and Brown allege that both Head of Safety Bennett and

2

Director of Safety MacNaughton were high level supervisors with authority to fire Plaintiffs or, at the very least, influence the decision to fire. *Id.* ¶¶ 26, 29.

While at the Towanda location and under the supervision of the aforementioned Chesapeake Defendant employees, Castleberry and Brown allege being subjected to the both discriminatory acts and a discriminatory environment. First, Plaintiffs allege that, on multiple occasions, someone had written "don't be black on the right of way" on a employee sign-in sheet retained by Plaintiffs' supervisors. *Id.* ¶¶ 31-32, 34.  Second, Plaintiffs allege being two of only three African Americans at the Towanda location, and that, despite having substantial pipeline experience, they were not given an assignment working on the Towanda pipeline and were instead relegated to clean around it. *Id.* ¶¶ 20, 35.  Because they were by this time the only African Americans working at the Towanda location, Plaintiffs allege that this prohibition only applied to African Americans. *Id.* ¶ 36. Third, while working on a pipeline running through Head of Safety Bennett's property on November 30, 2012, Plaintiffs were approached by Head of Safety Bennett who stated that Plaintiffs had "nigger-rigged" a fence on which they had been working. *Id.* ¶ 40.  Head of Safety Bennett further warned Plaintiffs that they would be fired if cows were able to escape through the fence. *Id.* ¶ 44.

Castleberry and seven (7) co-workers subsequently signed a statement

3

memorializing Head of Safety Bennett's comments. *Id.* ¶ 46.  Plaintiffs also

reported these comments to Superintendent Wyatt, Project Manager Bender, and

STI Defendant Project Manager Hunter Pennick. *Id.* ¶¶ 47-49.  Project Manager

Pennick subsequently informed Director of Safety MacNaughton of Head of Safety

Bennett's comments via an email complaint. *Id.* ¶ 50.  Castleberry and Brown allege

that neither Chesapeake Defendant nor STI Defendant investigated these

allegations, and that, two (2) weeks after lodging this complaint, they were

terminated in retaliation. *Id.* ¶¶ 53-54, 56.

Plaintiffs were shortly thereafter rehired by Superintendent Wyatt and Project

Manager Bender. *Id.* ¶ 57.  Following their re-hire, Castleberry and Brown allege

that they were advised by STI Group Defendant General Manager Doyle Arrant to

"leave and file a lawsuit," and that their complaints go "all the way to the top" of

both organizations. *Id.* ¶¶ 58-59.  Plaintiffs further allege that they were assigned to

work on a truck, rather than at the Towanda location, because of their race and in

retaliation for their race-based complaint. *Id.* ¶ 61.  Castleberry and Brown were

fired for a second time on January 25, 2013. *Id.* ¶ 62.  Although Defendants cited

"lack of work," Plaintiffs again allege their firing was in retaliation for their

complaint. *Id.* ¶ 64.

On June 15, 2015, Defendant Chesapeake Energy Corporation filed a Motion

4

to Dismiss Plaintiffs' Amended Complaint Pursuant to FED.R.CIV.P. 12(b)(6). (ECF

No. 16).  This Motion has since been fully briefed and is now ripe for disposition.

## II.    DISCUSSION

A.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a

motion to dismiss for "failure to state a claim upon which relief can be granted."

Such a motion "tests the legal sufficiency of a pleading," In re Hydrogen Peroxide

Litigation, 552 F.3d 305, 316 n. 15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v.

Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)), and

"streamlines litigation by dispensing with needless discovery and factfinding."

Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).  "Rule 12(b)(6) authorizes a

court to dismiss a claim on the basis of a dispositive issue of law." Id. at 326 (citing

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  This is true of any claim

"without regard to whether it is based on an outlandish legal theory or on a close

but ultimately unavailing one." Neitzke, 490 U.S. at 327.

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678.  "Asking for plausible grounds ... does not impose a
probability requirement at the pleading stage; it simply calls for enough fact to raise
a reasonable expectation that discovery will reveal evidence of [wrongdoing]."
Twombly, 550 U.S. at 556.  This determination is "a context-specific task that
requires the reviewing court to draw on its judicial experience and common sense."
Iqbal, 556 U.S. at 679.  "Where a complaint pleads facts that are 'merely consistent
with' a defendant's liability, it 'stops short of the line between possibility and
plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550
U.S. at 557 (internal quotations omitted)).

When disposing of a motion to dismiss, a court must "accept as true all
factual allegations in the complaint and draw all inferences from the facts alleged in
the light most favorable to [the plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d
224, 228 (3d Cir. 2008) (Nygaard, J.).  However, "the tenet that a court must accept
as true all of the allegations contained in the complaint is inapplicable to legal
conclusions." Iqbal, 556 U.S. at 678 (internal citations omitted).  "After Iqbal, it is
clear that conclusory or 'bare-bones' allegations will no longer survive a motion to
dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard,
J.).  "Threadbare recitals of the elements of a cause of action, supported by mere

6

conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210–11 (internal citations omitted).

B.  ANALYSIS

Within their Amended Complaint, Plaintiffs assert counts of harassment,

discrimination, and retaliation under 42 U.S.C. § 1981 ("Section 1981").[2]

Chesapeake Defendant subsequently moves for dismissal of these counts pursuant

to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be

---

[2] Section 1981(a) provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. 1981(a); Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010).

granted.  Granting this motion in its entirety, the Court will address separately each count within Plaintiffs' Amended Complaint.

1.  Joint Employer Liability

Within its Motion to Dismiss, Chesapeake Defendant argues that it cannot be held liable because Castleberry and Brown have failed to allege facts establishing joint employer liability.[3]  Because a failure by Plaintiffs to establish a plausible claim of joint employer liability would itself require the dismissal of all claims against Chesapeake Defendant, the Court will first address this issue.

Within the Third Circuit, two or more employers constitute "joint employers" when these independent legal entities "share or co-determine those matters governing the essential terms and conditions of employment." Thompson v. Real Estate Mortg. Network, 738 F.3d 142, 148-149 (3d Cir. 2014) (citing N.L.R.B. v. Browning-Ferris Indus. Of Pa. Inc., 691 F.2d 1117, 1124 (3d Cir. 1982).  To determine whether two employees share responsibilities governing essential terms and conditions of employment, the following factors have been found to be relevant:

1) Authority to hire and fire employees, promulgate work rules and

---

[3] The Court notes that Plaintiffs failed to brief whether Chesapeake Energy Corp. and STI Group, Inc. should, for purposes of extending liability to Chesapeake Defendant, be considered a single employer.  Because the Court finds "joint employer theory" applicable to Chesapeake Defendant, it will similarly not address this single employer issue.

assignments, and set conditions of employment, including compensation, benefits, and hours;

2) Day-to-day supervision of employees, including employee discipline; and

3) Control of employee records, including payroll, insurance, taxes and the like.

Tokash v. Foxco Ins. Management Services, Inc., No. 10–872, 2012 WL 1677437

at *6 (M.D.Pa. May 14, 2012)(Caputo, J.) (citing Butterbaugh v. Chertoff, 479

F.Supp.2d 485, 491 (W.D.Pa. 2007)).[4]

Accepting as true all of the allegations contained in Plaintiffs' Amended

Complaint, the Court finds that Castleberry and Brown have alleged sufficient facts

to make plausible the application of joint employer theory to Chesapeake

Defendant. Specifically, the Court notes that Castleberry and Brown identified two

employees of Chesapeake Defendant (Head of Safety Bennett and Director of

Safety MacNaughton) who both supervised Plaintiffs' work and had authority to

fire and discipline them. Furthermore, Castleberry and Brown allege that

Chesapeake Defendants retained "employee sign-in sheets" which could be

considered part and parcel of Plaintiffs' employment records. Therefore, because

---

[4] Originally applied within the context of FLSA claims, the Third Circuit has explicitly extended "joint employer theory" to apply to Title VII discrimination claims. Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997); Plaso v. IJKG, LLC, 553 F.App'x. 199, 205 (3d Cir. 2014). District Courts have since applied "joint employer doctrine" to other employment discrimination statutes. See, e.g., Tokash, 2012 WL 1677437 at *6 (applying joint employer doctrine in the context of an ADEA); Cella v. Villanova University, No. 01-7181, 2003 WL 329147 at *7 (E.D.Pa. Feb. 12, 2003) (applying joint employer doctrine in the context of an ADA claim).

these factual averments satisfy the above listed factors, the Court finds that

Castleberry and Brown have, within their Amended Complaint, made plausible the

application of joint employer doctrine to Chesapeake Defendant.

2.  Count I: 42 U.S.C. § 1981 (Harassment)

Concerning Plaintiffs' substantive Section 1981 claims, Chesapeake

Defendant first argues that Castleberry and Brown failed to allege sufficient facts to

make plausible their claim of harassment under Section 1981.

To establish a plausible claim for race-based harassment under Section 1981,

Plaintiffs must allege facts that (1) they suffered intentional discrimination because

of race; (2) the discrimination was pervasive and regular; (3) the discrimination

detrimentally affected the plaintiffs; (4) the discrimination would detrimentally

affect a reasonable person of the same race in that position; and (5) *respondeat*

*superior* liability existed. Ocasio v. Lehigh Valley Family Health Ctr., 92 F. App'x

876, 879 (3d Cir. 2004) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074,

1081 (3d Cir. 1996)).[5]

Chesapeake Defendant argues that Castleberry and Brown have failed to

allege sufficient facts establishing pervasive and regular discrimination and thus,

---

[5] While Aman concerns a Title VII hostile work environment claim, the Third Circuit has held that modifications in the Civil Rights Act of 1991 embodied Congress' intent that Section 1981 permits hostile work environment claims. Manatt v. Bank of Am., N.A., 339 F.3d 792, 797 (3d Cir. 2003).

their amended complaint should be dismissed.  Specifically, Chesapeake Defendant claims that Castleberry and Brown alleged a single incident of harassment which, as a matter of law, is insufficient to form a basis for a harassment claim.  In support thereof, Chesapeake Defendant argues that the Supreme Court has made clear that isolated incidents and the mere utterance of a epithet cannot, standing alone, give rise to a harassment claim.  In the alternative, Chesapeake Defendant further argues that, even if the Court were to find Head of Safety Bennett's comment actionable as harassment, liability could not be imputed because it had no knowledge of the harassment and therefore could not take remedial measures.

Accepting as true all of the allegations contained within Plaintiffs' Amended Complaint, the Court nonetheless finds that Castleberry and Brown have failed to plead facts making plausible their claim of harassment under Section 1981.  In reaching this conclusion, the Court notes the United States Supreme Court's holdings in both Farragher v. City of Boston and Clark County Sch. Dist. v. Breeden.  In Farragher, the Supreme Court reiterated that whether an environment is sufficiently hostile or abusive is determined by " 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance.' "[6] Farragher v. City of Boca Raton, 524 U.S. 775, 787-88 (U.S. 1998) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (U.S. 1993).   Similarly, in Clark County, the Supreme Court, following Farragher, found that a single isolated incident of sexually suggestive comment cannot be considered ' "extremely serious," as our cases require.  Clark County Sch. Dist v. Breeden, 532 U.S. 268, 271 (U.S. 2001).

Based on these decisions, the Court finds that, even when viewed in the light most favorable to Plantiffs, the factual averments within Plaintiffs' Amended Complaint do not give rise to a plausible claim of harassment under Section 1981. While the word "nigger"[7] is unquestionably an unacceptable and hateful epithet, Castleberry and Brown allege a single utterance by a Chesapeake Defendant employee.  Given the holdings of the Supreme Court, this single use of a racial epithet cannot by itself give rise to a plausible harassment claim under Section 1981.  Furthermore, even consideration of Plaintiffs' two additional allegations

---

[6] In a footnote to the Farragher opinion, the Court recognized that Courts of Appeals have "in sexual harassment cases . . .  drawn on standards developed in cases involving racial harassment."  The Court accepted this practice between sex and race-based claims, finding that "there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment."  Farragher, 524 U.S. at 787 fn. 1.

[7] In their brief opposing Chesapeake Defendant's Motion to Dismiss, Plaintiffs continually cite Williams v. Mercy Health Sys., 866 F.Supp.2d 490 (E.D.Pa. 2012).  This opinion, however, concerns repeated use of the epithet "nigger" and not a single use as alleged in the instant case.

concerning the sign-in sheet and Towanda job assignments fails to make plausible an inference of "pervasive and regular" harassment required to be actionable. Therefore, because a failure to plead pervasive and regular discriminatory conduct is itself dispositive, the Court will not reach whether Plaintiffs plead the existence of *respondeat superior*, and will instead dismiss Plaintiffs' Section 1981 harassment claim.

      3. Count II: 42 U.S.C. § 1981 (Discrimination)

      Chesapeake Defendant next argues in its Motion to Dismiss that Castleberry and Brown failed to allege sufficient facts to support their claim of race-based discrimination under Section 1981.

      To establish a plausible claim for race-based discrimination under Section 1981, Plaintiffs must allege sufficient facts that (1) their status as a racial minority; (2) the intent of defendant to discriminate on the basis of race; and (3) discrimination concerning one or more of the activities enumerated in § 1981. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010) (citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002)).

      In its Motion to Dismiss, Chesapeake Defendant argues that Castleberry and Brown fail to allege facts supporting their allegation that race influenced the decision to twice terminate them.  Plaintiffs counter that the facts alleged within

their Amended Complaint make plausible the Section 1981 discrimination claim. Specifically, Plaintiffs allege that the following facts support the inference that termination by Chesapeake Defendant was racially motivated: (1) Plaintiffs were told by representatives of STI Group that they should leave and file a lawsuit and that their complaints went "all the way to the top at Chesapeake; (2) Plaintiffs were assigned to work away from the Towanda location; and (3) no African Americans remained at the Towanda location after they were reassigned.

Even when viewed in the light most favorable to Plaintiffs, the Court finds that these allegations fail to state a plausible Section 1981 discrimination claim. First, the allegations concerning Plaintiffs' re-assignment from the Towanda location and the absence thereafter of any African Americans at the site fail to support a logical inference that discrimination played a role in Chesapeake's decisions to terminate Plaintiffs. The Court specifically notes that, absent additional factual allegations, there may be perfectly neutral, nondiscriminatory reasons for Plaintiffs' job assignment. Second, Plaintiffs appear to intimate that they were discharged because of their multiple complaints concerning Head of Safety Bennett's comments. These allegations, however, sound of possible retaliatory conduct and not a race-based discrimination claim. Plaintiffs also cite STI Group Defendant Doyle Arrant's comments prior to Plaintiff's ultimate

termination as support for their discrimination claim.  This allegation similarly

speaks to possible retaliatory conduct and not a discrimination claim.

Although termination would unquestionably be an adverse employment

action, Plaintiffs have failed to allege a factual basis from which discriminatory

animus can be inferred.  Therefore, because of Plaintiffs' scant factual averments,

the Court will dismiss this claim.

4. Count III: 42 U.S.C. § 1981 (Retaliation)

Finally, Chesapeake Defendant argues that Castleberry and Brown failed to

allege sufficient facts to support their claim of retaliation under Section 1981.

To establish a plausible claim for retaliation, Castleberry and Brown must

allege sufficient facts that (1) they engaged in a protected activity; (2) their

employer took an adverse employment action against them; and (3) there was a

causal connection between their participation in the protected activity and the

adverse employment action. Estate of Oliva, 604 F.3d at 798 (citing Moore v. City

of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006)).  Chesapeake Defendant

argues that Castleberry and Brown's Section 1981 retaliation claim should

dismissed because (1) Plantiffs did not have a reasonable belief that one comment

by a non-co-worker was unlawful, and (2) there was no causal connection between

Plaintiffs' complaint and their discharge.

15

Viewing the allegations contained in Plaintiffs' complaint in the light most favorable to them, the Court finds that Plaintiffs did not have a reasonable belief that one comment would be unlawful. The Court makes this finding based upon the highly analogous Supreme Court case of Clark County Sch. Dist. v. Breeden. In Clark County, the United States Supreme Court upheld the dismissal of the plaintiff's Title VII retaliation claim by finding that "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard." Clark County, 532 U.S. at 271. Like plaintiff in Clark County, the instant Plaintiffs complained to management about a single, isolated incident that they believed to be discriminatory and thereafter based a retaliation claim on their subsequent discharge.[8] Based on this factually analogous Supreme Court holding, the Court finds that Plaintiffs, in reporting these comments to Superintendent Wyatt, Project Manager Bender, and STI Defendant Project Manager Hunter Pennick, did not have a reasonable belief that one isolated incident would be unlawful. Plaintiffs' Section 1981 retaliation claim will, therefore, be dismissed.

## III.   CONCLUSION

---

[8] While Plaintiffs allege additional isolated incidents of "discrimination" in their Amended Complaint, the Court notes that the factual averments of said Amended Complaint do not indicate that Plaintiffs included these incidents in their complaint to management. These additional incidents, therefore, do not give weight toward the reasonableness of Plaintiffs' belief in unlawful discrimination.

Based on the aforementioned reasoning, Defendant Chesapeake Energy Corporation's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to FED.R.CIV.P. 12(b)(6) is hereby granted.

Under FED. R. CIV. P. 15, the Court grants Plaintiffs leave to amend the outlined deficiencies of their Complaint.

An appropriate Order follows.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge