IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ATRON CASTLEBERRY                :
1011 Debusk Street               :
Jacksonville, TX 75766           :        No.  4:15-CV-00153
                                 :
          and                    :
                                 :
JOHN BROWN                       :
158 County Road 2432             :
Alto, TX 75925                   :
                                 :
               Plaintiffs,       :        (Judge Brann)
                                 :
          v.                     :
                                 :
STI GROUP                        :
204 Wilson Industrial Drive      :
Towanda, PA 18848                :
                                 :
          and                    :
                                 :
CHESAPEAKE ENERGY                :
CORPORATION                      :
1 Fox Chase Drive                :
Towanda, PA 18848                :
                                 :
               Defendants.       :

**MEMORANDUM OPINION**

June 22, 2016

## I.  BACKGROUND

This matter involves two Plaintiffs who have previously been directed by

this Court to file a second amended complaint to remedy the deficiencies in their

first amended complaint. Plaintiffs have added some relatively insignificant details to the factual averments they allege, but not sufficient substantive facts to support their claims.  Accordingly, I will dismiss the action in its entirety pursuant to Federal Rules of Civil Procedure 12 and 15 for the reasons set forth below.

On January 22, 2015, Plaintiffs, Atron Castleberry and John Brown[1], brought a civil action pursuant to 42 U.S.C. § 1981 against Defendants STI Group and Chesapeake Energy Corporation[2]. Castleberry and Brown brought claims of Harassment (Count I), Discrimination (Count II), and Retaliation (Count III) against Defendants.

Castleberry and Brown filed an amended complaint on June 1, 2015, and both Defendants filed motions to dismiss the first amended complaint.  On November 4, 2015, I granted the motions with leave for Plaintiffs to amend the complaint.[3]  Plaintiffs then filed a second amended complaint, with the same three causes of action against Defendants.  On December 2, 2015, Defendants filed the instant motions to dismiss the amended complaint.[4]  The motions have been fully

---

[1]Hereinafter "Castleberry" and "Brown"

[2]Hereinafter "STI" and "Chesapeake"

[3]ECF No. 29.

[4]ECF Nos. 32 and 33.

briefed[5] and are now ripe for disposition.

## II. DISCUSSION

### A.  Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a
motion to dismiss for "failure to state a claim upon which relief can be granted."
Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation
by dispensing with needless discovery and factfinding."[6]  "Rule 12(b)(6) authorizes
a court to dismiss a claim on the basis of a dispositive issue of law."[7]  This is true
of any claim, "without regard to whether it is based on an outlandish legal theory
or on a close but ultimately unavailing one."[8]

Beginning in 2007, the Supreme Court of the United States initiated what
some scholars have termed the Roberts Court's "civil procedure revival" by
significantly tightening the standard that district courts must apply to 12(b)(6)

---

[5]Defendant STI should be aware that there are typos throughout its brief in support of its motion, ECF No. 34.  Each citation is in duplicate with some version of  "{TA /s}" before the duplicate citation.  I politely point this out to Defendant, as the typos were distracting, and while the undersigned can look past this, other courts may not.

[6]*In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (*quoting Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

[7]*Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

[8]*Neitzke*, 490 U.S. at 327.

motions.[9]  In two landmark decisions, Bell Atlantic Corporation v. Twombly and

Ashcroft v. Iqbal, the Roberts Court "changed . . . the pleading landscape" by

"signal[ing] to lower-court judges that the stricter approach some had been taking

was appropriate under the Federal Rules."[10]  More specifically, the Court in these

two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v.

Gibson and replaced it with a more exacting "plausibility" standard.[11]

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[12]  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[13]  "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

---

[9]Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313 (2012).

[10]550 U.S. 544 (2007); 556 U.S. 662, 678 (2009), *Wasserman, supra* at 319-20.

[11]*Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

[12]*Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

[13]*Iqbal,* 556 U.S. at 678.

4

unlawfully."[14]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[15]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[17]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[18]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[19]  "After Iqbal, it is clear that conclusory or 'bare-bones'

---

[14]*Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (Jordan, J.) (internal quotations and citations omitted).

[15]*Twombly*, 550 U.S. at 556.

[16]*Iqbal*, 556 U.S. at 679.

[17]*Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[18]*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[19]*Iqbal*, 556 U.S. at 678 (internal citations omitted).

allegations will no longer survive a motion to dismiss."[20]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[21]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[22]

With the standard of review in mind, I turn to the factual allegations of Plaintiffs.

B.  Facts Alleged in the Second Amended Complaint

The procedural dictate when faced with a motion to dismiss is that the court is to accept the facts alleged as true.  "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations."[23]

---

[20]*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[21]*Iqbal*, 556 U.S. at 678.

[22]*Connelly*, 2016 WL 106159, at *4 (internal quotations and citations omitted).

[23]*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]   That said, the following are the facts alleged in the second amended complaint.[25]

Castleberry and Brown are both African-American males hired by STI in March 2010.[26] STI is a subcontractor/placement staffing agency for Chesapeake. Plaintiffs were assigned to work[27] for a crew in Towanda, Pennsylvania under Defendant STI's superintendent Glenn Wyatt.[28]   Plaintiffs reported to Superintendent Wyatt and to Jim Bender,[29] STI's project manager.[30]   Plaintiffs'

---

[24]*Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

[25]Because the matter is proceeding on a second amended complaint, ECF No. 31, I will footnote the factual averments that are new/different from those in the now dismissed amended complaint.  Minor changes, such as adding the words "while working at the Towanda, Pennsylvania," location, in paragraph 19, will not be noted.  Only material, substantive changes are noted.

[26]In my November 4, 2015 Memorandum Opinion, I held that the matter can proceed on the joint employer doctrine.

[27]  Plaintiffs do not explain the nature of the work they were hired to do. Fom what I can glean from the briefs, Plaintiffs believe that they were hired to work on pipelines; in what fashion, however, the papers do not make clear.

[28]Hereinafter "Superintendent Wyatt."  Plaintiffs did not state Superintendent Wyatt's race.

[29]Hereinafter "Project Manager Bender." Plaintiffs did not state Project Manager Bender's race.

[30]This is a new factual averment.

work was also overseen by Chesapeake's Head of Safety, Tammy Bennett.[31]

Plaintiffs aver that Head of Safety Bennett had authority to fire Plaintiffs, or

influence the decision to fire Plaintiffs.[32]  Head of Safety Bennett's supervisor was

Chesapeake's Director of Safety, Shad MacNaughton.[33]

At the time that the Plaintiffs were hired, there was only one other African-

American employee at the Towanda location.[34]  Shortly thereafter, this other

African-American employee was "fired," leaving Plaintiffs as the sole African-

American employees at the work site in Towanda.[35]

Plaintiffs aver the following facts[36] as evidence of harassment and

discrimination:

¶ 31.        [E]ach morning the laborers would have to sign-in.[37]

---

[31]Hereinafter "Head of Safety Bennett."  Plaintiffs did not state Head of Safety Bennett's race.

[32]This is a new factual averment.

[33]Hereinafter "Director of Safety MacNaughton."  Plaintiffs did not state Director of Safety MacNaughton's race.

[34]This is a new factual averment.

[35]This is a new factual averment.

[36]Pursuant to the Third Circuit's directive, I have "identif[ied] allegations that, because they are no more than[legal] conclusions, are not entitled to the assumption of truth" and have not refer to them as 'facts.' *See Connelly*, 2016 WL 106159, at *4.

[37]This is a new factual averment.

¶ 32.     On multiple occasions, someone had written "don't be black on the right of way" on the sign in sheet.[38]

¶ 34.     Plaintiffs' supervisors would have been aware of the discriminatory comments on the sign-in sheets since they retained these documents.[39]

¶ 35.     By way of further example, despite coming to the Towanda location with substantial experience working on pipelines, Superintendent Wyatt and Project Manager Bender would refuse to permit Plaintiffs, the only African Americans at the Towanda location, to work directly on the pipeline, but would only permit Plaintiffs to clean around the pipeline.[40]

¶ 37.     At all times relevant herein, Plaintiffs worked on a worksite of Defendant Chesapeake that was adjacent to property owned by Head of Safety Bennett.

¶ 38.     During said time, Defendant Chesapeake was running a pipeline through Head of Safety Bennett's property.

---

[38]This is a new factual averment.

[39]This is a new factual averment.

[40]This is a new factual averment.

¶ 39.    On or about November 30, 2012, as part of Plaintiffs' and their co-workers' employment duties, Plaintiffs and their co-workers were required to remove a fence on Head of Safety Bennett's property, in order to allow Defendant Chesapeake to run the pipeline.

¶ 40.    As Plaintiffs and their co-workers were in the process of removing the fence, Head of Safety Bennett approached them and stated that they "nigger-rigged" the fence.

¶ 41.    Head of Safety Bennett then asked Plaintiff Castleberry whether he was offended by her use of the racial slur.

¶ 42.    Plaintiff Castleberry responded that he was offended by Head of Safety Bennet's use of the racial slur.

¶ 43.    Head of Safety Bennett then told Plaintiff Castleberry that he should learn how to "take a joke."

¶ 44.    Demonstrating Head of Safety Bennett's ability to fire Plaintiffs, she also stated that if the cows got out due to the fence, they would all be fired.[41]

Plaintiffs aver the following facts as evidence of retaliation:

---

[41]This is a new factual averment.

¶ 47.　　Plaintiff Castleberry called and reported Head of Safety

Bennet's highly offensive use of the word 'nigger' to

Superintendent Wyatt.

¶ 48.　　Plaintiff Brown also called and reported Head of Safety

Bennett's highly offensive use of the word 'nigger' to

Superintendent Wyatt and Project Manager Bender.

¶ 54.　　Within approximately two (2) weeks thereafter, Defendants

fired Plaintiffs.

¶ 57.　　Shortly thereafter, Plaintiffs were rehired by Defendant STI and

Defendant Chesapeake; this was done by Project Manager

Bender and Superintendent Wyatt, as they recognized that

Plaintiffs should not have been fired in the first place.

¶ 62.　　On January 25, 2013, Plaintiffs were again fired by Defendants,

stating "lack of work" as the reason behind the firing.

I will discuss each count against Defendants in turn, bearing these factual

allegations in mind.

C.  Discussion

*1.  Count I: Harassment in Violation of 42 U.S.C. § 1981*

In my November 4, 2015 Memorandum Opinion dismissing the first

11

amended complaint with leave to amend, I explained my reasoning as to Count I as

follows.

> To establish a plausible claim for race-based harassment under Section
> 1981, Plaintiffs must allege facts that (1) they suffered intentional
> discrimination because of race; (2) the discrimination was pervasive and
> regular; (3) the discrimination detrimentally affected the plaintiffs; (4)
> the discrimination would detrimentally affect a reasonable person of the
> same race in that position; and (5) respondeat superior liability existed.
> *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 879 (3d
> Cir. 2004) (*citing Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074,
> 1081 (3d Cir. 1996)). (fn While *Aman* concerns a Title VII hostile work
> environment claim, the Third Circuit has held that modifications in the
> Civil Rights Act of 1991 embodied Congress' intent that Section 1981
> permits hostile work environment claims. *Manatt v. Bank of Am., N.A.*,
> 339 F.3d 792, 797(3d Cir. 2003).

*****

> Accepting as true all of the allegations contained within Plaintiffs'
> Amended Complaint, the Court nonetheless finds that Castleberry and
> Brown have failed to plead facts making plausible their claim of
> harassment under Section 1981. In reaching this conclusion, the Court
> notes the United States Supreme Court's holdings in both *Farragher v.
> City of Boston and Clark County Sch. Dist. v. Breeden*. In *Farragher,* the
> Supreme Court reiterated that whether an environment is sufficiently
> hostile or abusive is determined by " 'looking at all the circumstances,'
> including the 'frequency of the discriminatory conduct; its severity;
> whether it is physically threatening or humiliating, or a mere offensive
> utterance; and whether it unreasonably interferes with an employee's
> work performance.' " *Farragher v. City of Boca Raton*, 524 U.S. 775,
> 787-88 (U.S. 1998) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23
> (U.S. 1993)  (fn In a footnote to the *Farragher* opinion, the Court
> recognized that Courts of Appeals have "in sexual harassment cases . .
> . drawn on standards developed in cases involving racial harassment."
> The Court accepted this practice between sex and race-based claims,

finding that "there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." *Farragher*, 524 U.S. at 787 fn. 1. Similarly, in *Clark County*, the Supreme Court, following *Farragher*, found that a single isolated incident of sexually suggestive comment cannot be considered ' "extremely serious," as our cases require. *Clark County Sch. Dist v. Breeden*, 532 U.S. 268, 271 (U.S. 2001).

Based on these decisions, the Court finds that, even when viewed in the light most favorable to Plaintiffs, the factual averments within Plaintiffs' Amended Complaint do not give rise to a plausible claim of harassment under Section 1981. While the word "nigger" (fn In their brief opposing Chesapeake Defendant's Motion to Dismiss, Plaintiffs continually cite *Williams v. Mercy Health Sys.*, 866 F.Supp.2d 490 (E.D.Pa. 2012). This opinion, however, concerns repeated use of the epithet "nigger" and not a single use as alleged in the instant case.) is unquestionably an unacceptable and hateful epithet, Castleberry and Brown allege a single utterance by a Chesapeake Defendant employee. Given the holdings of the Supreme Court, this single use of a racial epithet cannot by itself give rise to a plausible harassment claim under Section 1981. Furthermore, even consideration of Plaintiffs' two additional allegations concerning the sign-in sheet and Towanda job assignments fails to make plausible an inference of "pervasive and regular" harassment required to be actionable. Therefore, because a failure to plead pervasive and regular discriminatory conduct is itself dispositive, the Court will not reach whether Plaintiffs plead the existence of respondeat superior, and will instead dismiss Plaintiffs' Section 1981 harassment claim.[42]

In my November 4, 2015 Order I also explained that the harassment claim under § 1981 would be dismissed because it did not aver sufficient facts to support a claim, specifically as to the second element – that the discrimination was

---

[42]ECF No. 29 at 10-13.

13

pervasive and regular.  In response, Plaintiffs added in the second amended complaint the allegation that "don't be black on the right of way" had been written on the sign in sheet.  However, this allegation had been asserted by Plaintiffs in their briefs opposing the prior motion to dismiss, and I had addressed it in my prior memorandum opinion.  Accordingly, although Plaintiffs attempted to amend the complaint by adding allegations, I had previously stated that the factual averments regarding the sign in sheet were insufficient.

Plaintiffs proffer three cases that they believe are analogous to the case at bar. They believe that the "holding" of these three cases is that one or two uses of the word "nigger" are sufficiently pervasive and regular.   I respectfully disagree.

First, in *Williams v. Mercy Health Sys.*,[43] Plaintiff Williams was an African-American nurse working for Caucasian supervisors.  In addition to the circumstantial evidence of discrimination, such as giving a preferable work schedule to Caucasian nurses, Plaintiff Williams' supervisors called her a "coon" on one occasion and a "nigger" on at least three occasions.[44]

Second, in *Rogers v. Western-Southern Life Ins. Co.*,[45] Plaintiff Rogers'

---

[43]866 F. Supp 2d 490 (E.D. Pa. March 20, 2012).

[44]*Id.*  at 494.

[45] 12 F.3d 668 (7th Cir. 1993).

supervisor directed the word "nigger" twice to Plaintiff Rogers and at least ten times in front of Plaintiff Rogers' colleagues.  Additionally, Plaintiff Rogers' supervisor said to him, "You black guys are two fucking dumb to be insurance agents" and that "You must think you're back in Arkansas chasing jackrabbits."[46] In addition to these epithets, Plaintiff Rogers' supervisor's supervisor advised that they would not hire any more black insurance agents.[47]

In the final case Plaintiffs cite to support their contentions, *Griffin v. Harrisburg Prop. Services,*[48] Plaintiff Griffin's supervisor, a Caucasian man said to Plaintiff Griffin, "You know why there are black people, because God left  them in the oven too long."[49]  The supervisor also said to Plaintiff Griffin, "The reason why we have AIDS is because black men have sex with monkeys."[50]   The supervisor next texted Plaintiff Griffin  "Black babies were given wings by God. P.S. God does this mean I'm an angel. God laughed and said no nigga is means you are a bat."[51]

---

[46]*Id.* at 671.

[47]*Id.*

[48]2009 U.S. Dist. LEXIS 109097 (M.D. Pa. 2009) (Rambo, J.)

[49]*Id.* at *2-3.

[50]*Id.* at *3.

[51]*Id.*

All of the aforementioned cases evince a regular and pervasive harrassing environment. As I delineated in my November 4, 2015 Memorandum Opinion, given the guidance from the Supreme Court, the single use of a racial epithet cannot by itself give rise to a plausible harassment claim under Section 1981. Such a claim cannot be premised on the fact that some unknown person wrote on the sign in sheet, "don't be black on the right of way." This notation may or may not be a racially discriminatory statement. Even taking this notation in combination with Head of Safety Bennett's poor choice of words in describing her fence as "nigger-rigged," a pervasive and regularly racially harassing environment is not created. As Plaintiffs has added nothing new to their second amended complaint, and the cases they cite do not present the holdings Plaintiffs suggest they do, this claim is again dismissed.

    2.  *Count II: Discrimination in Violation of 42 U.S.C. § 1981*

In my November 4, 2015 Memorandum Opinion dismissing the first amended complaint with leave to amend, I explained my reasoning regarding Count II as follows.

> To establish a plausible claim for race-based discrimination under Section 1981, Plaintiffs must allege sufficient facts that (1) their status as a racial minority; (2) the intent of defendant to discriminate on the basis of race; and (3) discrimination concerning one or more of the activities enumerated in § 1981. *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (*citing Pryor v. Nat'l*

16

*Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)).

In its Motion to Dismiss, Chesapeake Defendant argues that Castleberry and Brown fail to allege facts supporting their allegation that race influenced the decision to twice terminate them. Plaintiffs counter that the facts alleged within their Amended Complaint make plausible the Section 1981 discrimination claim. Specifically, Plaintiffs allege that the following facts support the inference that termination by Chesapeake Defendant was racially motivated: (1) Plaintiffs were told by representatives of STI Group that they should leave and file a lawsuit and that their complaints went "all the way to the top at Chesapeake; (2) Plaintiffs were assigned to work away from the Towanda location; and (3) no African Americans remained at the Towanda location after they were reassigned.

Even when viewed in the light most favorable to Plaintiffs, the Court finds that these allegations fail to state a plausible Section 1981 discrimination claim. First, the allegations concerning Plaintiffs' re-assignment from the Towanda location and the absence thereafter of any African Americans at the site fail to support a logical inference that discrimination played a role in Chesapeake's  decisions to terminate Plaintiffs. The Court specifically notes that, absent additional factual allegations, there may be perfectly neutral, nondiscriminatory reasons for Plaintiffs' job assignment. Second, Plaintiffs appear to intimate that they were discharged because of their multiple complaints concerning Head of Safety Bennett's comments. These allegations, however, sound of possible retaliatory conduct and not a race-based discrimination claim. Plaintiffs also cite STI Group Defendant Doyle Arrant's comments prior to Plaintiff's ultimate termination as support for their discrimination claim. This allegation similarly speaks to possible retaliatory conduct and not a discrimination claim.

Although termination would unquestionably be an adverse employment action, Plaintiffs have failed to allege a factual basis from which discriminatory animus can be inferred. Therefore, because of Plaintiffs'

scant factual averments, the Court will dismiss this claim.[52]

Plaintiffs have averred nothing new in their second amended complaint to support this particular claim, and their arguments in their briefs are the same arguments the undersigned previously rejected.   Plaintiffs have failed to allege an intent to discriminate sufficient to survive the pending Rule 12(b)(6) motions.

### 3.  Count III: Retaliation in Violation of 42 U.S.C. § 1981

In my November 4, 2015 Memorandum Opinion dismissing the first amended complaint with leave to amend, I explained my reasoning as to the final count as follows.

> To establish a plausible claim for retaliation, Castleberry and Brown must allege sufficient facts that (1) they engaged in a protected activity; (2) their employer took an adverse employment action against them; and (3) there was a causal connection between their participation in the protected activity and the adverse employment action. *Estate of Oliva*, 604 F.3d at 798 (*citing Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006)). Chesapeake Defendant argues that Castleberry and Brown's Section 1981 retaliation claim should dismissed because (1) Plaintiffs did not have a reasonable belief that one comment by a non-co-worker was unlawful, and (2) there was no causal connection between Plaintiffs' complaint and their discharge.
>
> Viewing the allegations contained in Plaintiffs' complaint in the light most favorable to them, the Court finds that Plaintiffs did not have a reasonable belief that one comment would be unlawful. The Court makes this finding based upon the highly analogous Supreme Court case of

---

[52]ECF No. 29 at 13-15.

Clark County Sch. Dist. v. Breeden. In Clark County, the United States Supreme Court upheld the dismissal of the plaintiff's Title VII retaliation claim by finding that "[n]o reasonable person could have believed that the single incident recounted above violated Title VII's standard." Clark County, 532 U.S. at 271. Like plaintiff in Clark County, the instant Plaintiffs complained to management about a single, isolated incident that they believed to be discriminatory and thereafter based a retaliation claim on their subsequent discharge. (fn While Plaintiffs allege additional isolated incidents of "discrimination" in their Amended Complaint, the Court notes that the factual averments of said Amended Complaint do not indicate that Plaintiffs included these incidents in their complaint to management. These additional incidents, therefore, do not give weight toward the reasonableness of Plaintiffs' belief in unlawful discrimination. Based on this factually analogous Supreme Court holding, the Court finds that Plaintiffs, in reporting these comments to Superintendent Wyatt, Project Manager Bender, and STI Defendant Project Manager Hunter Pennick, did not have a reasonable belief that one isolated incident would be unlawful. Plaintiffs' Section 1981 retaliation claim will, therefore, be dismissed.[53]

Plaintiffs have again failed to allege anything new in their second amended complaint to survive the renewed motions to dismiss; the second amended complaint makes the same factual assertions that I previously found to be insufficient.

## III. CONCLUSION

For all of the foregoing reasons, the Defendants Motions to Dismiss are granted.  An appropriate Order follows.

---

[53]ECF No. 29 at 15-16.

BY THE COURT

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge